***********
Upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good ground to receive further evidence or to rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence affirms the Decision and Order of the Deputy Commissioner.
 ***********
The following documents were introduced into evidence by stipulation of the parties at trial:
 EXHIBITS
1. Plaintiffs' Exhibit 1: North Carolina Department of Correction (hereinafter "NCDOC") form Notice of Action Taken by Classification Authority dated 28 January 1997.
2. Plaintiffs' Exhibit 2: NCDOC form Notice of Hearing for Consideration dated 23 January 1997.
3. Plaintiffs' Exhibit 3: NCDOC form Notice of Hearing for Consideration dated 28 January 1997.
4. Defendant's Exhibit 1: NCDOC Medical Records for James Bunch, Jr.
 ***********
Based upon the competent evidence of record, the Full Commission enters the following:
 FINDINGS OF FACT
1. Plaintiff James Bunch was incarcerated by defendant at the Caledonia Correctional Institute (hereinafter "Caledonia") on 12 January 1997.
2. James Bunch (hereinafter, Bunch) is married to June Bunch, a former schoolteacher who is now medically retired from that profession. June Bunch is a Diabetic, Type II. Her medical condition necessitated amputation of her foot prior to 1997. She also suffers from high blood pressure. She has never been charged with any criminal offenses or crimes of morale turpitude.
3. June Bunch visited Bunch at Caledonia on 12 January 1997. Prior to the visitation, defendant had received information alleging that Bunch was selling illicit drugs at Caledonia. Defendant assigned two correctional officers to monitor Bunch and his wife during their visitation.
4. One officer monitoring the visitation became suspicious that Bunch had swallowed a balloon containing contraband during the visitation. Bunch was strip searched after the visitation. No contraband was found.
5. Assistant Superintendent Lawrence Solomon was a correctional captain on 12 January 1997. He obtained information over a course of time that Bunch was receiving illicit drugs. Officers monitoring the visitation between Bunch and his wife informed him that they believed Bunch had swallowed a balloon.
6. Solomon, pursuant to defendant's policy, requested that Bunch submit to an x-ray examination to determine if Bunch had secreted contraband internally. Bunch initially consented to the x-ray examination and was transported to Moore County Hospital for that purpose. When he arrived at the hospital, Bunch revoked his consent to be searched by x-ray.
7. Inmates who refuse x-ray examination are placed in a "dry cell." In a "dry cell," inmates' excrement is examined over a period of two days to detect the presence of any contraband. Defendant's officers found no contraband in conjunction with Bunch.
8. The greater weight of the evidence establishes that the search of Bunch was conducted in accordance with defendant's policies and procedures.
9. Terrell Wilder knows both Bunch and his wife. During January 1997, Wilder was employed at a McDonald's Restaurant in Ahoskie, North Carolina. His immediate supervisor at McDonald's was also employed at Caledonia, though Wilder does not remember his supervisor's name. Wilder described the Caledonia officer as slim, medium build, approximately 5'9" with short-cropped hair and a receding hair line.
10. Wilder's supervisor, during a casual conversation at McDonald's, informed Wilder that Bunch and a woman by the name of June, and giving a description consistent with June Bunch, attempted to smuggle controlled drugs, believed to be marijuana, into Caledonia. The supervisor generally disparaged Bunch.
11. Plaintiffs contend that a former defendant correctional officer, Officer Hendrix, was the individual who was employed at McDonald's and informed Wilder of the investigation involving Bunch. Officer Hendrix denied those allegations during an internal investigation of this matter. Plaintiffs have not proven by the greater weight of the evidence the identity of the corrections officer, however, plaintiffs have, for the purposes of this civil action, proven that a corrections officer at Caledonia engaged in a disparaging conversation with Wilder about plaintiffs.
12. Wilder informed June Bunch of the conversation with his supervisor. June Bunch contends that the disparagement caused her great emotional distress. She further contends that the public revelations increased her blood pressure and worsened her diabetic condition to the extent that she had to have her leg amputated to her knee in June 1997. She also testified that she suffered general humiliation that exhibited itself by feelings that she did not want to socialize with her friends and acquaintances.
13. No expert medical testimony was offered into evidence establishing any causal connection between June Bunch's need for additional amputation of her leg and the revelations of defendant's officer while working at McDonald's.
14. Shortly after the visitation in January 1997, defendant officials employed administrative proceedings against Bunch. His status as an inmate was reclassified by the Inmate Classification Board. Bunch was transferred within the NCDOC to Central Prison, lost visiting privileges for some five months, was not allowed telephone privileges for a period of time and was confined in segregation briefly. Defendant, in accordance with its administrative policies, changed Bunch's status to B9 (any crime) and C9 (loan sharking) infractions.
15. James Wilson, currently Superintendent at Odom Correctional Institution, was Assistant Superintendent of Operations at Caledonia during the period at issue in this civil action. Bunch was subject to investigation for a conspiracy involving mailing of large sums of money from using another inmate's prison account. Bunch was also subject to investigation for bartering of goods, trading of goods and misuse of mail privileges. Superintendent Wilson testified that the administrative proceedings against Bunch were not based on the incidents of 12 January 1997.
16. Bunch has failed to prove by the greater weight of the evidence that any defendant administrative discipline was taken against him for the incidents relating to 12 January 1997.
 ***********
Based upon the foregoing Findings of Fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. N.C. Gen. Stat. § 143-291 is a waiver of the sovereign immunity of the State of North Carolina to permit civil actions against the State of North Carolina for "negligence of any officer, employee, involuntary servant or agent of the State while acting within the scope of his office, employment, service, agency or authority, under circumstances where the State of North Carolina, if a private person, would be liable to the claimant in accordance with the laws of North Carolina." The Tort Claims Act is in derogation of the state's sovereign right to be immune from suit, and therefore, the Act should be strictly construed. Creel exrel. Morgan v. North Carolina Dept. of Health and Human Services,152 N.C. App. 200, 566 S.E.2d 832 (2002).
2. Plaintiffs allege libel, slander and defamation of character. These are causes of action founded in tort, but not negligence. Plaintiffs have no remedy under the Tort Claims Acts as it is applicable only to "negligent" acts of employees and other agents of the State. Mazzucco v.North Carolina Bd. of Medical Examiners, 31 N.C. App. 47, 228 S.E.2d 529,appeal dismissed, 291 N.C. 323, 230 S.E.2d 676 (1976).
 ***********
Based upon the forgoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 ORDER
1. Plaintiffs' claims under the State Tort Claims Act for libel, slander and defamation of character in I.C. No. TA-16382 must be and are hereby DISMISSED WITH PREJUDICE.
2. No costs are taxed as plaintiff was permitted to proceed informa pauperis.
This the ___ day of June, 2003.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/_______________ DIANNE C. SELLERS COMMISSIONER
 S/____________ BUCK LATTIMORE CHAIRMAN